IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) Criminal No.   1:20-CR-25 (GTS) |
| | ) |
| v. | ) **Information** |
| | ) |
| **DAREN ARAKELIAN,** | ) Violation(s):   18 U.S.C. § 1343 |
| | )                            Wire Fraud |
| | ) |
| | ) 1 Count |
| | ) |
| **Defendant.** | ) County of Offense:   Albany |

### THE UNITED STATES ATTORNEY CHARGES:

### COUNT 1
### [Wire Fraud]

At all times material to this information:

1. **DAREN ARAKELIAN** ("the defendant") was a resident of the Northern District of New York and the sole owner, president, and operator of Great 4 Image ("G4I") and Knickerbocker Golf, LLC, doing business as Kings Cross Knickers.

2. G4I was a Rensselaer and Latham, New York-based company that, among other things, contracted with the United States Department of Defense ("DOD"), Department of Homeland Security ("DHS") and General Services Administration ("GSA") to produce commodities such as backpacks, duffle bags, cinch bags, hydration packs, t-shirts and individual suspension trainers for the United States Government. Kings Cross Knickers was a company that sold golf knickers and other golf-related apparel.

3. The Buy American Act ("BAA"), 41 U.S.C. §§ 8301 et seq., was a statute that required the United States government to buy domestic articles, materials, and supplies. The primary purpose of the BAA was to discourage the United States government from buying foreign

products and to protect American labor. The BAA applied to direct purchases by the federal government above the micro-purchase threshold, provided their purchase was consistent with the public interest, the items were reasonable in cost, and they were for use in the United States. The BAA required that "substantially all" of the acquisition be attributable to American-made components. Regulations have interpreted this requirement to mean that at least 50% of the cost of the product must be attributable to American content, or in the case of "Commercial Off the Shelf" ("COTS") products, that the product is manufactured in the United States. Under the Defense Federal Acquisition Regulation Supplement ("DFARS") implementation of the BAA, companies could also provide products manufactured in a "qualifying country." The People's Republic of China (China) was not a qualifying country and was not an approved country under the BAA.

4. The Trade Agreements Act ("TAA"), 19 U.S.C §§ 2501-2582, was a statute that restricted certain U.S. government procurements to products manufactured or substantially transformed in the United States or a TAA-designated country. The TAA provided that the federal government could acquire only "U.S.-made or designated country end products" and required government contractors to certify that each "end product" met the applicable requirements. "End products" were defined as "those articles, materials and supplies to be acquired for public use." The TAA applied a rule-of-origin requirement to the end product being supplied to the U.S. government and required those end products to be "wholly the growth, product or manufacture" of the United States or of a designated country, or "substantially transformed" in the United States or a designated country "into a new and different article of commerce with a name, character, or use distinct from that of the article or articles from which it was transformed." China was not an approved country under the TAA; the TAA prohibited purchases of products made in China.

5. COMPANY A was a U.S.-based company that procured products manufactured in China for G4I.

6. COMPANY B was a company based in China that was affiliated with COMPANY A and sold Chinese products to G4I through COMPANY A.

7. COMPANY C was a company based in China that sold Chinese products to G4I.

8. COMPANY D was a U.S.-based company that procured products manufactured in China for G4I.

### The Scheme to Defraud

9. From in or around March 2014, through in or around December 2016, in Albany County in the Northern District of New York, and elsewhere, the defendant, **DAREN ARAKELIAN**, devised and intended to devise a scheme and artifice to defraud and to obtain money and property from the United States government by means of false and fraudulent pretenses, representations, and promises, transmitting and causing to be transmitted by means of interstate commerce, writings, signs and signals for the purpose of executing such scheme and artifice.

10. The objective of the scheme and artifice to defraud was for the defendant to defraud the United States government, that is, the Department of Defense and other federal departments and agencies, by fraudulently importing goods that were made in China into the United States and then deceptively marketing and selling those goods to the United States government as being made in the United States and as compliant with domestic preference laws, namely, the TAA and/or the BAA.

11. It was part of the scheme and artifice that the defendant, through his company G4I, beginning in or around March 2014, in an effort to fraudulently enrich himself, sought to obtain

and, in some cases, to compete, bid on, and win government contracts that specifically required that the products, such as t-shirts, backpacks, and hydration packs be made in the United States or other approved countries.

12.   It was further part of the scheme and artifice to defraud that the defendant purchased products from Company A, Company C, and Company D, and caused those products to be imported from China into the United States.

13.   It was further part of the scheme and artifice to defraud that the defendant disguised and lied about the products' place of origin to the United States government.

14.   It was further part of the scheme and artifice to defraud that the defendant falsely represented to the United States government that his company was the manufacturer of the products and that the products were made in the United States or other approved countries.

15.   It was further part of the scheme and artifice to defraud that the defendant submitted invoices to the United States government requesting payment for products that the defendant falsely represented to the United States government as having been manufactured in the United States, thereby causing the United States government to electronically transfer funds to the defendant.

## Interstate Wire Transmission

16.  On or about December 14, 2016, the defendant, having devised said scheme and artifice, for the purpose of executing and attempting to execute such scheme and artifice, and for obtaining money by means of false and fraudulent pretenses, did cause to be transmitted in interstate commerce, by means of a wire communication, a writing, sign, and signal, specifically, an email communication sent from Latham, New York, to a federal employee located in Fort Gordon, Georgia, in which the defendant falsely and materially represented that products he had sold to the United States Army were made in New York, California, and Georgia, in compliance with the TAA, when in fact, as the defendant knew, the products were made in China and violated the terms of his contract with the United States government.

All in violation of Title 18, United States Code, Section 1343.

Dated: March 10, 2020

GRANT C. JAQUITH
United States Attorney

By: _____
Joshua R. Rosenthal
Assistant United States Attorney
Bar Roll No. 700730